IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-ct-03131-BO

| | | |
|---|---|---|
| Greg H. Johnson | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| M. Meadows, et. al., | ) | |
| Defendants. | ) | |

The matter comes before the Court to provide a written decision providing the basis for the court's oral order at the September 2022 trial granting defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) as to plaintiff's claims for excessive force and deliberate indifference.

I. Background

Plaintiff Greg H. Johnson ("Mr. Johnson") initiated this civil rights action, *pro se*, pursuant to 42 U.S.C. § 1983, and named Officer Morris Meadows, Officer Timmie Hicks, Sergeant Edward E. Bramble, and Nurse Nichole Leszczak as defendants. In 2018, Plaintiff Greg H. Johnson was an inmate at Polk Correctional Institute (known now as Granville Correctional Institute). On the morning of September 2, 2018, Mr. Johnson alleges that Officer Meadows used excessive force in violation of the Eighth Amendment. Plaintiff suffered injuries from that use of force, and Plaintiff alleges Sergeant Bramble, Nurse Leszczak, and Officer Hicks acted with deliberate indifference to those injuries in violation of the Eighth Amendment. This Court denied defendant's motion for Summary Judgement.[1] On September 13, 2022, a jury trial commenced in

---

[1] This Court denied the plaintiff's motion for summary judgment because there were various witness statements that supported Mr. Johnson's claims. [DE 85]. But these statements are irrelevant to this motion because none of the material evidence was entered into evidence.

1

Elizabeth City, North Carolina. During plaintiff's case in chief, the jury heard testimony from Officer Meadows, Officer Hicks, Sergeant Bramble, Nurse Leszczak, and Mr. Johnson.

The following evidence was undisputed at trial. On the morning of September 2, 2018, Officer Meadows and Officer Hicks escorted Nurse Leszczak on her rounds to deliver medicine to the inmates. Their route took them past Mr. Johnson's cell. Both officers were aware that Mr. Johnson had an extensive disciplinary history. Officer Meadows noticed that Mr. Johnson had obstructed his cell's food slot. This was a violation of prison policy. Officer Meadows and Officer Hicks approached Mr. Johnson's cell, and Mr. Johnson started yelling threats at the officers. Officer Meadows sprayed his pepper spray. Mr. Johnson reached his arm through the food slot, and Officer Meadows struck it with his baton. Mr. Johnson continued to yell threats at the officers. As Officer Meadows walked away, he yelled some threats back at Mr. Johnson. Officer Meadows and Mr. Johnson never had any other contact. The whole incident lasted about fifteen seconds.

Later that day, Sergeant Edward E. Bramble cleaned up the pepper spray outside Mr. Johnson's cell. Mr. Johnson's cell was not decontaminated. Eight days later, an x-ray revealed that Mr. Johnson had a fractured hand.

Some facts are sharply disputed. Officer Meadows testified that he ordered Mr. Johnson to remove whatever was obstructing his food slot before using his pepper spray. Mr. Johnson denies this. Sergeant Bramble testified that he gave Mr. Johnson fresh linen and cleaning supplies to decontaminate his cell. Mr. Johnson testified he was never given fresh linen or

cleaning supplies. Defendants testified that Mr. Johnson refused medical care. Mr. Johnson testified that he was never offered any medical care.

The defendants moved for judgment as a matter of law pursuant to Rule 50(a). The Court granted defendants' motion and dismissed the case.

## DISCUSSION

A court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial, and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 405 (4th Cir. 1999) (internal quotation marks omitted). "A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). "Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996). All evidence should be viewed in the light most favorable to the non-movants. *Malone v. Microdyne Corp.*, 26 F.3d 471, 472 n. 1 (4th Cir.1994).

II. No reasonable jury could find that Officer Meadows used excessive force against Mr. Johnson

Mr. Johnson's claim revolves around why Officer Meadows used force. The "core judicial inquiry" is whether the force was nontrivial and "was applied ... maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). Here, a reasonable jury

3

could find the amount of force sufficient for an excessive force claim. But no reasonable jury could find Officer Meadows applied that force maliciously and sadistically to cause harm.

1) The amount of force was sufficient

The objective prong measures the nature of the force employed, asking whether that force "was sufficiently serious to establish a cause of action." *Brooks v. Johnson,* 924 F.3d 104, 112 (4th Cir. 2019). What matters is the severity of the force. *Wilkins*, 559 U.S. at 39. Anything more than de minimis force is sufficient. *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). A baton strike and pepper spray can be sufficient to make out an excessive force claim. *See id.* at 303.

Here, Mr. Johnson testified that Officer Meadows was the one who sprayed the pepper spray and struck Mr. Johnson's hand with his baton. A reasonable jury could find that this was more than de minimis force. Therefore, the amount of force was sufficient to make out an excessive force claim.

2) Officer Meadows did not maliciously or sadistically cause harm to Mr. Johnson

The inmate must show a prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). A culpable state of mind is "wantonness in the infliction of pain." *Brooks*, 924 F.3d at 112 (citing *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008)). The officer must have applied the force "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39.

There is not enough evidence for a reasonable jury to find that Officer Meadows had a sadistic or malicious motive. In fact, that evidence suggested that Officer Meadows had a good faith motive to protect officer safety and restore discipline.

4

a) No reasonable jury could find an impermissive motive on such a threadbare record

The movant is entitled to judgment as a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996). "[t]he decision to use force often involves split-second judgments made under tense and difficult circumstances, and that due deference is owed to correctional officers' efforts to protect their own and others' safety." *Dean*, 984 F.3d at 305 (citations omitted).

Mr. Johnson simply has not provided enough evidence for a reasonable jury to impute an improper motive to Officer Meadows. He did not provide a sworn and detailed account of the incident.[2] He did not identify any statements made by Officer Meadows that would suggest an impermissible motive.[3] The only direct evidence that Mr. Johnson provided was his conclusory testimony that Officer Meadows wrongfully used excessive force.

Mr. Johnson testified that Officer Meadows became agitated after the use of force. But the issue is Officer Meadows's mental state during the use of force. So this testimony is not probative to Officer Meadows's mental state during the use of force.

---

[2] This distinguishes his case from other cases that appear favorable to the plaintiff. *Dean*, 984 F.3d at 307 (noting the plaintiff produced a "sworn and detailed attestation" contesting the officers' account of the incident); *Brooks*, 924 F.3d at 114–16 (4th Cir. 2019) (describing record evidence supporting the plaintiff's version of the altercation).

[3] See *Dean*, 984 F.3d at 307–08 (defendant's statement that plaintiff had "done [expletive] up," could be used to find the defendant had a malicious mental state); *Brooks*, 924 F.3d at 115 (defendants' statements complaining about plaintiff's disrespectful attitude and threats to sue officers could be evidence of the defendants' malicious mental state).

5

Mr. Johnson testified that Officer Meadows never filed a use of force memorandum. But none of the evidence explained how Mr. Johnson's basis for this knowledge. And Mr. Johnson never clarified how the absence of such a memorandum was relevant to Officer Meadows's alleged malicious motive. No reasonable jury could determine that Officer Meadows acted maliciously and sadistically on such a threadbare record.

      b) Circumstantial evidence shows that Officer Meadows did not have a culpable state of mind

The evidence showed that Officer Meadows acted in good faith. "Corrections officers act in a 'good faith effort to maintain or restore discipline' – that is, with a permissible motive – not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." *Brooks*, 924 F.3d at 113 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1984)).

For example, in *Grayson v. Peed*, the detainee (Collins) stuck his arm through a food slot and refused to remove it. Officers attempted to move him to a more secure cell. In the ensuing struggle, Collins was punched several times and was pronounced dead the next day. *Grayson v. Peed*, 195 F.3d 692, 694–95 (4th Cir. 1999). Collins's estate brought an excessive force suit against the officers. The Fourth Circuit rejected the claim. The court reasoned that when Mr. Collins stuck his arm through the food slot, he posed a danger to the correctional officers who might walk by his cell. Because the correctional officer's use of force was an attempt to neutralize that danger, the officers acted "in a good faith effort to maintain or restore discipline." *Id*. at 696. The facts in *Grayson* mirror the facts in this case.[4]

---

[4] There is a distinction between Grayson and this case. In *Grayson*, Mr. Collins was a pre-trial detainee, so he alleged a violation of the Due Process Clause of the 14th amendment. Here, Mr. Johnson is a prisoner, so he alleges

6

The Supreme Court in *Whitley v. Albers* set out four factors from which "we may infer the existence of the subjective state of mind required for an Eighth Amendment violation." *Brooks*, 924 F.3d at 116. Those factors are:

(1) "the need for the application of force";
(2) "the relationship between the need and the amount of force that was used";
(3) the extent of any reasonably perceived threat that the application of force was intended to quell; and
(4) "any efforts made to temper the severity of a forceful response."

*Whitley v. Albers*, 475 U.S. 312, 321 (1986). The four factors suggest that Officer Meadows used force to restore prison discipline and neutralize a serious threat to his physical safety.

The first factor is the need to apply force. *Id*. Force may be used when there is a threat to an officer's physical safety or in an attempt to "preserve internal order by compelling compliance with prison rules and procedures." *Brooks*, 924 F.3d at 113. At trial, there was uncontested evidence that (1) a prisoner reaching through his cell's food slot posed a danger to nearby corrections officers, and (2) Mr. Johnson reached his arm through the food slot while Officer Meadows was nearby. This suggests Officer Meadows needed to use force to "confront an immediate risk" to his "physical safety." *Brooks*, 924 F.3d at 113. There was also uncontested evidence that prison policy prohibits a prisoner from reaching through the food slot. This suggests Officer Meadows needed to use force to "preserve internal order by compelling compliance with prison rules and procedures." *Hudson v. McMillian*, 503 U.S. 1, 6 (1984).

The second factor is "the relationship between the need and the amount of force that was used." *Whitley*, 475 U.S. at 321. Considering the need for force and the fact that Mr. Johnson posed a threat to the officers, the amount of force Officer Meadows used was reasonable. *Cf. Iko*

---

a violation of the 8th amendment. However, the distinction does not favor Mr. Johnson because pre-trial detainees enjoy more rights than prisoners. Despite this, the court still found that Collins's rights were not violated.

7

v. *Shreve*, 535 F.3d 225, 239–40 (4th Cir. 2008) (finding the amount of force disproportionate to the need because the inmate was incapacitated).

The third factor is the extent of any reasonably perceived threat that the application of force was intended to quell. *Whitley*, 475 U.S. at 321. Officer Meadows reasonably perceived Mr. Johnson to be a serious threat because (1) he understood the danger that could result if an inmate managed to grab him through the food slot, (2) he knew that Mr. Johnson had a history of violence, and (3) Mr. Johnson was threatening the officers at the time.

- The physical threat of an inmate blocking the food slot

Officer Meadows knew that reaching out through the food slot threatened his fellow officer's safety. He testified that a prisoner might reach through the food slot in order to stab an officer with a needle or throw feces at an officer.[5] Even Mr. Johnson admits that reaching through the food door would threaten the officer. All this suggests Officer Meadows reasonably perceived Mr. Johnson's outstretched arm to be a serious threat.

- Officer Meadows knew of Mr. Johnson's disciplinary history

Mr. Johnson admits he hasn't been a saint in prison. He did not deny that he had punched a correctional officer in the face. During his prison sentence, he has been adjudged guilty of assault with a weapon, lock tampering, and disobeying a direct order. Mr. Johnson doesn't recall precisely how many disciplinary infractions he's had, but he admits it could be over thirty.

Meadows testified that correctional officers would have known his disciplinary history. And Officer Meadows testified that, directly after the incident, he told Mr. Johnson that he can't

---

[5] That's why it was prison policy for the prisoner to never break the food slot plane.

8

"do the things he's used to doing." This shows that Officer Meadows knew about Mr. Johnson's past violent behavior.

- Mr. Johnson's verbal threats

An officer can reasonably perceive an inmate who is yelling threats to be more threatening than an inmate who is not. *See Thompson v. Virginia*, 878 F.3d 89, 100 (4th Cir. 2017) (finding a prisoner to be less threatening because that prisoner was not threatening the officers). Before and during the use of force, Nurse Leszczak testified that Mr. Johnson yelled threats at the officers.

The fourth and final factor is the effort made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321. Officer Meadows could not have done more to temper the severity of the force because, after the incident, he was prohibited from future contact with Mr. Johnson.

These four factors suggest that Officer Meadows used force to restore prison discipline and defend himself from a serious threat. Considered alongside the fact that there is almost no evidence of Officer Meadows's impermissible motive, no reasonable jury could find that Officer Meadows used excessive force against Mr. Johnson.

III.   No failure-to-protect claim against Hicks

The deliberate indifference standard may apply to correctional officers who fail to protect inmates from an unconstitutional use of force. See *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); see *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *Buckner v. Hollis*, 983 F.2d 119, 122 (8th Cir. 1993); *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). Plaintiff alleges Officer Hicks was deliberately

9

indifferent in his failure to protect plaintiff from Officer Meadows's excessive force. But no reasonable jury could find that Officer Meadows used excessive force. Therefore, plaintiff's claim against Officer Hicks fails.

IV. No reasonable jury could find that Sergeant Bramble, Nurse Leszczak, or Officer Hicks was deliberately indifferent

Plaintiff alleges that Sergeant Bramble, Nurse Leszczak, and Officer Hicks were deliberately indifferent when they did not decontaminate his cell and did not offer him medical care to treat his injured hand. To establish an Eighth Amendment claim challenging his conditions of confinement, plaintiff must "show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993).

Mr. Johnson alleges he was injured by (1) the failure to decontaminate his cell of pepper spray and (2) the delay in treatment for his broken hand.

1) Objective Prong

As to the objective prong, "a prisoner must [demonstrate] 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

There is no evidence that Mr. Johnson was injured by the pepper spray. Both sides agree that Officer Meadows deployed his pepper spray in the sallyport outside Mr. Johnson's cell. Mr. Johnson testified that the pepper spray had reached parts of his cell. But there no evidence

10

showed the pepper spray actually injured him. In fact, Nurse Leszczak testified that Mr. Johnson appeared unaffected by the pepper spray. No reasonable jury could find that Mr. Johnson was injured by the pepper spray.

Assuming the three remaining defendants did delay the treatment, "[t]he objective prong requires [Mr. Johnson] to show that the alleged delay . . . put him at a substantial risk of serious harm." *Moskos*, 24 F.4th at 298. (quotations omitted). Mr. Johnson testified that Officer Meadows broke his hand which "altered his bone structure" and causes him daily pain. Mr. Johnson testified that the remaining defendants delayed his treatment.[6] Mr. Johnson offered no evidence connecting their delay with his injury. In other words, Mr. Johnson's allegations of delayed treatment fail because he does not establish an "affirmative causal link" between the inaction and the harm. *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir. 1984).

In *McClary v. Holder*, a prisoner was allegedly denied a decontamination shower after being pepper sprayed. The prisoner filed suit, alleging this denial amounted to deliberate indifference. But the prisoner offered no evidence linking his injury with the failure to provide a decontamination shower. Therefore, this Court found no deliberate indifference. *McClary v. Holder*, No. 5:18-CT-3051-FL, 2021 WL 1095301, at *6 (E.D.N.C. Mar. 22, 2021) Like the prisoner in *McClary*, Mr. Johnson has offered no evidence linking his injury with the alleged delay in treatment. Therefore, no reasonable jury could find those three defendants were liable for the plaintiff's alleged injuries stemming from the pepper spray.

---

[6] This was a sharply contested issue. But on a 50(a) motion, this Court draws all inferences in favor of the non-movant.

11

2) Subjective Prong

As to the subjective prong, Mr. Johnson must prove "that the officials acted with a sufficiently culpable state of mind." *Moskos v. Hardee*, 24 F.4th 289, 297 (4th Cir. 2022) (quoting *De'Lonta*, 330 F.3d at 634). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Moskos*, 24 F.4th at 298 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mr. Johnson offered no evidence that the defendants knew he suffered any injury at all.

V. Conclusion

Defendant's motion for a judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure is GRANTED. The case is dismissed.

SO ORDERED, this __29__ day of September, 2022.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE